IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PERRY SHIAO, | ) | Case No. 1:23-cv-2097 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Pending before the Court is the Defendant City of Cleveland's Motion for Judgment on the Pleadings on Plaintiff's Amended Complaint. The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636, *et seq.* (ECF Doc. 25). For the reasons that follow:

(i) Defendant City of Cleveland's Motion for Judgment on the Pleadings of Plaintiff's Amended Complaint is GRANTED as to Plaintiff's federal claims;

(ii) All remaining state-law claims are REMANDED to the Cuyahoga County Court of Common Pleas.

**I.  Background**

Plaintiff is the owner of the land and a now-demolished property located at 14130 Sylvia Ave., Cleveland, Ohio, 44110, Permanent Parcel No. 112-23-083 ("Property"). (ECF Doc. 22, ¶ 1). On August 18, 2022, Defendant City of Cleveland ("City"), having knowledge and information of potential health and safety issues at the property, sought consent to enter the property and conduct an interior inspection. (ECF Doc. 30, p. 1). Plaintiff consented, and upon inspection, the City found numerous health and safety violations, including, but not limited to, damaged or missing roofing, walls, windows, gutters, downspouts, baseboards, heating facilities and porch segments. *Id.* The City issued a Violation Notice dated September 22, 2022, setting forth all hazards found on the property, specific codified ordinance citations, the right to appeal,

and the possibility of demolition. *Id.,* see also (ECF Doc. 22, ¶¶ 19-20). The Notice of Violation was sent to Plaintiff via certified mail and e-mail, and the Notice was also posted on the property. (ECF Doc 30., p. 1) Nearly one year after the Notice of Violation, the property was demolished on September 7, 2023. *Id.*

In his Amended Complaint, Shiao asserts five causes of action against the City: (i) Conversion (Count One); (ii) Unconstitutional and Illegal Taking (Count Two); (iii) State Unconstitutional and Illegal Taking (Count Three); (iv) Negligence (Count Four); and (v) Tortious Interference with Business Opportunities (Count Five). (ECF Doc. 22, ¶¶ 10-16).

On May 9, 2024, the City moved for judgment on the pleadings on plaintiff's Amended Complaint. (ECF Doc. 30). Plaintiff has not filed a response in opposition.

## II. Standard of Review

After the pleadings have closed, a defendant may move for judgment on the pleadings under Rule 12(c) on the basis that a plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Lindsay v. Yates,* 498 F.3d 434, 438 (6th Cir. 2007). When a party moves for dismissal of a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," that party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch,* 946F.2d 451, 454-55 (6th Cir. 1991).

When reviewing a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to [the] plaintiff[], accept all the well-pleaded factual allegations as true, and draw all reasonable inferences in [the] plaintiff['s] favor." *Guertin v. Michigan,* 912 F.3d

2

907, 916 (6th Cir. 2019). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). To survive, the factual assertions in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court must disregard conclusory allegations including legal conclusion couched as factual allegations. *Twombly,* 550 U.S. at 555. Mere labels and conclusions are not enough – neither are facts merely consistent with liability. *Iqbal,* 556 U.S. at 677-78.

**III. City's Motion for Judgment on the Pleadings**

    **A.**    *Monell* **Violation**

Plaintiff brings his causes of action pursuant to 42 U.S.C.A. § 1983, claiming violations of his civil rights as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of Ohio. (ECF Doc. 22, ¶ 10). Plaintiff argues that the City engaged in conduct under the color and pretense of law, depriving him of his rights, privileges, and immunities secured by those amendments, as well as the laws of the United States, the Constitution and laws of the State of Ohio, and the Codified Ordinances of the City of Cleveland. *Id.*, at ¶ 7. The City contends that Plaintiff is asserting a 42 U.S.C. § 1983 *Monell* violation against the City, as he claims that the City's actions were made under the color of law and those actions violated his Constitutional rights. (ECF Doc. 30, p. 7). The City notes that to prevail on a § 1983 *Monell* claim, the plaintiff must prove: (1) a violation of a constitutional right; and (2) that a municipal policy or custom directly caused the violation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-92 (1978); *Jocke v. City of Medina,* 2023 WL

3

5167326 at *4 (6th Cir. Aug. 11, 2023), citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The City argues that the *Monell* claim fails as Plaintiff does not demonstrate an underlying Constitutional right under the Fifth or Fourteenth Amendments that was violated. Additionally, the City argues the second prong of a *Monell* claim, requiring that the constitutional violation be a byproduct of the execution of a municipality's "official policy or custom" is not demonstrated.

The United States Supreme Court has held that a "plaintiff must identify a municipal 'policy' or 'custom' that caused the injury,' in order to subject the municipality to liability for a constitutional violation under 42 U.S.C. § 1983." *Haddon v. City of Cleveland*, 481 F.Supp.3d 642, 651, *citing Bd. Of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397 (1997). "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.*, citing *Monell*, 436 U.S. at 692. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Id. citing Bd. of Cty. Comm'rs of Bryan Cty., Okl.* at 397.

There are four theories of municipal responsibility that can support a *Monell* claim. The plaintiff may prove:

(1) The existence of an illegal official policy or legislative enactment;

(2) That an official with final decision-making authority ratified illegal actions;

(3) The existence of a policy of inadequate training or supervision; or

(4) The existence of a custom of tolerance or acquiescence of federal rights violations."

*Jackson v. City of Cleveland,* 925 F.3d. 793, 828 (6th Cir. 2019), quoting *Burgess v. Fischer,* 735 F.3d 462 (6th Cir. 2013). The City argues that Plaintiff does not specify which of the four

methods he is seeking to prove, that he does not offer any facts to support any of the four, and that accordingly the *Monell* claim fails.

As noted above, when assessing a Motion for Judgment on the Pleadings, it is necessary to construe the facts in the light most favorable to the plaintiff, but the court is not bound to accept as true a legal conclusion couched as a factual allegation. In his Amended Complaint,[1] Plaintiff alleges "violations of [plaintiff's] civil right as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States." (ECF Doc. 22, ¶ 10). Plaintiff further alleges that:

> this cause of action is brought as a result of the City's purposeful and ostensibly authorized violations of plaintiff's rights under the Fourteenth Amendment of the United States Constitution. Defendant City has on its books and regularly enforces ordinance 3103.09, which . . . authorizes plaintiff to confiscate and demolish defendant's real estate and that of all others similarly situated merely by posting a notice on the targeted property and/or by publishing a notice in some local publication . . . even where the address of the owner . . . is well known to the City.

(ECF Doc. 22, ¶ 13). While not expressly written, this suggests a violation of the Plaintiff's Constitutional Right to Due Process and is sufficient to meet the first prong of the *Monell* test.

As to the second prong of the *Monell* test, because the plaintiff does not identify which of the four theories he intends to prove, it is necessary to analyze each one to determine if the *Monell* claim can survive. Under the first theory, where it is necessary for the plaintiff to show an official policy or legislative enactment, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993). The plaintiff must show that there were "formal rules or understandings – often but not always committed to

---

[1] Shiao has not filed a response to the City's Motion for the Judgment on the Pleadings. Nonetheless, I turn to his Amended Complaint to determine if any claims may survive.

writing – that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Jackson* at 829, quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986).

Under *Monell*, a municipality cannot be found liable unless "a plaintiff can establish that an officially executed policy, or the toleration of a custom within [the municipality] leads to, causes or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir. 1996). Plaintiff here does not assert that an officially executed policy led to, caused, or resulted in the deprivation of a constitutionally protected right. Rather, he appears to rely on the toleration of a custom that led to the violation. A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Id.,* citing *Monell* at 691. In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Id.* citing *Nashville, Chattanooga and St. Louis Ry. Company v. Browning,* 310 U.S. 362, 369 (1940). A "custom" is a "legal institution" not memorialized by law. *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (1993).

The "custom" implied by Plaintiff appears to be demolition of nuisance properties without providing ample notice and opportunity for appeal. As will be discussed below, it does appear that ample notice and opportunity for appeal was provided to the plaintiff. Even assuming a lack of such notice, it must be noted that there is no indication or evidence of a pattern of similar events that would in fact suggest the existence of a "custom." Rather, Plaintiff appears to be relying on this single instance where he claims such an occurrence as support for a "custom." This Court does not find this single event sufficient to establish fixed plans of action to be

6

followed under similar circumstances consistently and over time. Accordingly, even viewing the evidence in a light most favorable to the plaintiff, the first theory fails.

The second theory of municipal responsibility requires a demonstration that an official with final decision-making authority has ratified illegal actions. *Lipman v. Budish,* 974 F.3d 726, 747 (6th Cir. 2020). An official acting with the final decision-making authority may ratify the unconstitutional acts of its employees in two ways. The first is through "affirmative approval of a particular decision made by a subordinate." *Alsaada v. City of Columbus*, 536 F.Supp.3d 216, 270-71 (S.D. Ohio 2021), citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 650 (6th Cir. 1993). The second is by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Id.,* citing *Wright v. City of Euclid,* 962 F.3d 852, 882 (6th Cir. 2020).

Here, the plaintiff has not named a final decision-maker whose actions could be construed as a ratification of an illegal act of an employee. There is no indication of what action taken by a subordinate constituted an illegal act. There is no identification of an official approval of any act, including those deemed "unconstitutional," by a decision-maker. This lack defeats this theory of *Monell* liability.

In order to succeed on a claim of inadequate training the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Stucker v. Louisville Metro Government,* 2024 WL 2135407, citing *Ouza v. City of Dearborn Heights,* 969 F.3d 265, 286-87 (6th Cir. 2020); *see also City of Canton v. Harris,* 489 U.S. 378, 388 (1989). "Municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the relevant officials." *Connick v. Thompson,* 563 U.S.

7

51, 61 (2011), quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (internal marks omitted). Policy makers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." *Id.* Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Id.*

In his pleadings, Plaintiff does not identify any particular training that he purports to be inadequate. There are no facts cited that tend to point toward inadequacies in any training program, nor indifference by the City or any officials toward any such policy. As there are no inadequacies noted, there can be no nexus drawn to any injury suffered by the plaintiff. Accordingly, this theory to meet the second prong of the *Monell* test fails.

The fourth and final theory requires the existence of a custom of tolerance or acquiescence of federal rights violations. An act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Bd. Of Cty. Comm'rs v. Brown,* 520 U.S. 397, 403-04 (1997). To succeed on a custom of tolerance claim, a plaintiff must prove:

(1) The existence of a clear and persistent pattern of [illegal activity];

(2) Notice or constructive notice on the part of the [municipality]

(3) The [municipality's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) That the [municipality's] custom was the 'moving force' or direct causal link in the constitutional deprivation.

8

*Stewart v. City of Memphis, Tennessee,* 788 F. App'x. 341, 346-47, citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005). Failing to prove even one of those four elements causes a custom of tolerance claim to fail. *Id.*

The first element of this theory requires a showing of a clear and persistent pattern of illegal activity. Plaintiff does not plead any pattern of activity, let alone illegal activity, to substantiate a custom of tolerance. Accordingly, without need to consider the remaining elements, the plaintiff is unable to establish a custom of tolerance to sustain this theory. As all four theories available to establish that a municipal policy or custom directly caused a Constitutional violation have been found deficient, there can be no finding that the pleadings establish a *Monell* claim upon which relief can be granted.

### B. Federal Illegal Taking

Plaintiff alleges that the demolition of the property constituted an "unconstitutional and illegal taking" giving rise to claims under the Fifth and Fourteenth Amendments to the Constitution of the United States. (ECF Doc. 22, ¶ 56). The Takings Clause, made applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." *Tyler v. Hennepin Cnty., Minnesota,* 598 U.S. 631, 637 (2023). "However, a government does not run afoul of the Clause when it exercises its police power to abate a public nuisance, since '"all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community."'" *Cordts v. Griffis,* No. 18-13017, 2020 WL 1274966, *6 (E.D. Mich., Mar. 16, 2020), quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S 470. 491-92 (1987). Courts have consistently held that there is no unconstitutional taking where the state destroys property which posed a public nuisance. *Folse v. City of Huntington,* 2024 WL 1270531, *6 (S.D. W.V. March 5, 2024),

9

citing *Mugler v. Kansas,* 123 U.S. 623, 669 ("The exercise of police power by the destruction of property which is itself a public nuisance . . . is very different from taking property for public use."); *Embassy Realty Invs., Inc v. City of Cleveland,* 572 F. App'x 339, 344 (6th Cir. 2014) ("Compensation is not mandated when the state legitimately exercises police power to abate a property nuisance."); *In re 106 Walnut. LLC*, 447 F. App'x. 305, 309 (3rd Cir. 2011) ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property.").

The Sixth Circuit has acknowledged that "[d]emolition . . . in order to enforce building codes or abate a public nuisance does not constitute a taking." *Cordts* 2020 WL 1274966, at *7, citing *Davet v. City of Cleveland,* 456 F.3d 549, 554 (6th Cir. 2000). "But the demolition must be compliant with local law and procedure." *Id.* That procedure requires proper notice and a valid means of determining that property was in fact a public nuisance. *Id.*

Plaintiff contends that the City enacted legislation "which it relied upon and uses under its authority and by custom and usage, under a purported concern for public safety, to deprive persons such as plaintiff of notice and opportunity to respond by posting notices on the subject property or via publication in lieu of its duty to provide a notice reasonably calculated to apprise plaintiff" of its intention to demolish the property. (ECF Doc. 22, ¶ 58). Plaintiff alleges that he did not receive notice of the results of an inspection of his property or of the City's intention to demolish, and that the results of the inspection were issued "in secret". (*Id.* at ¶ 62.). However, Plaintiff acknowledges the fact that the Notice of Violation was posted on the property. (*Id.* at ¶ 25). He further argues, without evidence, that the City adjusted its demolition schedule, and

10

advanced the demolition of his property for the purpose "discriminating against out of state owners." (*Id.* at ¶ 64).

State statutes and local ordinances require notice to the property owners and govern the demolition of buildings and other structures. Pursuant to Ohio Revised Code § 715.26(B), a municipal corporation such as the City of Cleveland may "provide for the inspection of building or other structures and for the removal . . . of insecure, unsafe or structurally defective buildings." This statute provides that the City, "at least thirty days prior to the removal[,] . . . shall give notice by certified mail of its intention with respect to such removal . . . to owners of record of such property." Ohio Rev. Code § 715.26(B); *see also First Floor Living LLC v. City of Cleveland,* 584 F.Supp.3d 476, 486 (N.D. Ohio 2022).

The procedures by which the City regulates buildings and other structures are outlined in Cleveland's Codified Ordinances, § 3103.09(b)(1). This ordinance provides that the City can declare a building a nuisance that is an "unsafe structure" or "injurious to or a menace to the public health, safety or welfare, or [is] structurally unsafe, unsanitary" or otherwise unsafe, a fire hazard, vacant or a "hazard to the public health, safety or welfare by reason of inadequate maintenance, dilapidation, obsolescence or abandonment." Cleveland Codified Ordinances § 3103.09(b)(1), *First Floor Living LLC*, 584 F. Supp. At 486. All unsafe structure or conditions are considered public nuisances.

If a building is deemed a public nuisance, Cleveland Codified Ordinance § 3103.09(e)(1) requires the City to "forward by certified mail to the owner, agent or person in control of the building . . . a written notice of violation stating the defects in the building or structure." This notice shall require the owner "to abate the nuisance condition of the building or structure by correction of the violations and defects . . . or by demolition and removal of the building,

11

structure or a portion of those." The notice shall also state that "if the nuisance is not abated within the required time that the Director may take appropriate action to repair, remove or otherwise abate the public nuisance and that the owner, agent or person in control shall be responsible for the costs." *Id.* If the owner neglects the notice or fails to repair, rehabilitate or demolish the structure, the City "may take appropriate action to demolish and remove an unsafe structure or to remove or abate any condition that is defined as a nuisance." *Id.* at § 3013.09(h)(1). Before beginning demolition, the City must provide notice thirty days in advance, but notice separate from notice of violation is not required. *Id.* at § 3103.09(h)(2).

  The City clearly followed the procedure outlined in the Ohio Revised Code and the Cleveland Codified Ordinances when deeming the property a public nuisance and effectuating its demolition. Any notion that the Plaintiff was not provided notice that his property had been determined to be a nuisance, or that it was scheduled for demolition, is belied by the history of the case. An initial interior inspection of the property was conducted with Plaintiff's consent on August 18, 2022. (ECF Doc. 24-1, p. 3). Upon inspection, the City found numerous health and safety violation, including, but not limited to damaged and missing roofing, walls, windows, gutters, downspouts, baseboards, heating facilities and porch segments, and deemed the property to be "an immediate hazard to human life." (*Id.* at p. 1-4). All violations were clearly delineated in the City's Notice of Violation which was sent via Certified Mail to Perry Shiao at 1101 SW 112th Street, Pembroke Pines, Florida 33025 and signed for by the plaintiff. (*Id.* at p. 2). The City also sent notice via email and posted it on the property. The Notice of Violation was specific as to the Violations, noted the possibility of demolition, and set forth the right of appeal. (*Id.* at p. 1-4).

Had the City only noticed the Plaintiff by certified mail, that alone would have been sufficient notice according to the relevant statutory authority and ordinances. Further advising the plaintiff by email, and at an email address that had been used to communicate successfully with the plaintiff in the past, including when seeking consent for the inspection, provided even greater certainty of sufficient notification. Posting notice on the property, in and of itself, has been deemed sufficient notice where letters sent to notify have been returned undelivered. *Keene Group, Inc. v. City of Cincinnati, Ohio,* 998 F.3d 306, 314 (6th Cir. 2021).

When, as here, each of these methods was used to provide absolute certainty that proper notice had been served, it is inarguable that the City met its burden. Accordingly, even construing the complaint in light most favorable to the plaintiff, Plaintiff has failed to state a Takings Claim, pursuant to either United States Constitution upon which relief can be granted.

## IV. State Law Claims

When the Court finds that dismissal of the federal claims over which it has original jurisdiction in a case removed from state court is appropriate - said claims being the basis for the City's Notice of Removal to this Court from the Cuyahoga County Court of Common Pleas (ECF Doc. 1) in this case - it may exercise its discretion to decline the exercise of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any remaining state law claims and remand those claims back to the state court. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction").

Having found that the City is entitled to judgment on the pleadings of Plaintiff's federal claims, I decline to exercise jurisdiction over the remaining claims that are rooted solely in state law and remand them back to the Cuyahoga County Court of Common Pleas.

13

### V.     Conclusion

Accordingly, for the foregoing reasons,

- (i)     Defendant City of Cleveland's Motion for Judgment on the Pleadings of Plaintiff's Amended Complaint is GRANTED as to Plaintiff's federal claims;

- (ii)    All remaining state-law claims are REMANDED to the Cuyahoga County Court of Common Pleas.

**IT IS SO ORDERED.**

Dated: August 8, 2024

Reuben J. Sheperd
United States Magistrate Judge